HUGHES ET AL., Trustees *v.* BELTWAY
HOMES, INC.

[No. 51, September Term, 1975.]

*Decided November 26, 1975.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*James B. Deerin, Jr.,* with whom was *John H. Treanor, Jr.,* on the brief, for appellants.

*Stephen H. Helfrich,* with whom was *Robert P. Slaby* on the brief, for appellee.

SMITH, J., delivered the opinion of the Court.

We shall here hold that no distinction is to be made between law and equity in the application of Maryland Rule 625 a and that the portion of the rule stating, "After the expiration [of 30 days from the entry of a judgment] the court shall have revisory power and control over such judgment, *only* in case of fraud, mistake or irregularity" means just that, with no exception for equity cases not heard upon their merits. (Emphasis added.)

Appellants, Florent B. Hughes and Peggy Guthrie, trustees named in a deed of trust (the Trustees), sold a house in Prince George's County at a foreclosure sale. The advertisement of sale correctly set forth the street address and the legal description of the land but it stated that the dwelling located on the land contained four bedrooms when, in fact, it had only three bedrooms. In accordance with the custom prevailing in many of the counties of Maryland for foreclosure sales, the sale took place at the courthouse door rather than on the premises. Appellee, Beltway Homes, Inc. (Beltway), was the purchaser at the sale on February 14, 1974. The sale was ratified by the Circuit Court for Prince George's County on April 29, 1974. On August 9, 1974, almost six months after the sale, Beltway moved to set aside the order of ratification, stating that the house contained but three bedrooms, "[t]hat the misrepresentation as to the number of bedrooms contained in the dwelling [was] a material misrepresentation which substantially alter[ed]

the bargain struck between the trustees and the movant; . . . [t]hat the said misrepresentation, if willful, constitutes a fraud; if inadvertent, it constitutes a mistake;" and "[t]hat Rule 625 a provides that an enrolled judgment or decree may be set aside for fraud, mistake or irregularity." Judge Bowie, in a well-reasoned opinion, denied the motion. The Court of Special Appeals reversed in *Beltway Homes, Inc. v. Hughes*, 26 Md. App. 146, 337 A. 2d 193 (1975). It found dicta in some of our cases subsequent to the adoption of Rule 625 which led it to the conclusion that under Rule 625 an exception exists for equity cases not heard upon their merits.

Rule 1 a 1 states in pertinent part:

> "The Rules in Chapters 100-600 bearing numbers of which the last two digits constitute numbers between 1 and 39, inclusive, apply to procedure generally, both at law and in equity.
>
> "The Rules in Chapters 100-600 bearing numbers of which the last two digits constitute numbers between 40 and 69, inclusive, apply to procedure at law only.
>
> "The Rules in Chapters 100-600 bearing numbers of which the last two digits constitute numbers between 70 and 99, inclusive, apply to procedure in equity only."

It will be noted that "the last two digits [of Rule 625] constitute numbers between 1 and 39." Therefore, Rule 625 applies "to procedure generally, both at law and in equity." Rule 5 o states in pertinent part:

> " 'Judgment' means judgment at law, decree in equity or other act or order of court final in its nature . . . ."

An order ratifying a sale is a judgment within the meaning of the rule because it is an "order of court final in its nature." *Hersh v. Allnutt*, 252 Md. 513, 519, 250 A. 2d 629 (1969), and *Ed Jacobsen, Jr., Inc. v. Barrick*, 252 Md. 507, 511, 250 A. 2d 646 (1969). Thus, the rule is applicable to a proceeding such as this.

It is obvious that confusion has existed in the past on the subject of equity cases not heard upon their merits. Chief Judge Marbury attempted to clear up some of that misunderstanding prior to the adoption of Rule 625 when he said for the Court in *Vierling v. Holt,* 197 Md. 522, 80 A. 2d 24 (1951):

> "The earlier cases, upon which these last mentioned decisions also rely for authority, indicate that instead of there being three classes of cases, there are only two, (1) where the decree was entered by mistake or surprise, and (2), where the circumstances are such as to satisfy the court that the decree should be set aside, and that, in each of these two classes of cases, it must also appear that the case has not been heard upon the merits." *Id.* at 526.

Pursuant to the recommendation of the Rules Committee after the decision of the Court of Special Appeals in *Capobianco v. Gordon,* 19 Md. App. 662, 313 A. 2d 517 (1974), a committee note was placed under Rule 625 a reading:

> "**Committee note.** — This section is applicable to both law and equity judgments. (For definition of 'Judgment,' see Rule 5 o). It prescribes the *only* three grounds upon which a court may exercise revisory power over an enrolled judgment. Such decisions as Pinkston v. Swift, 231 Md. 346, 190 A.2d 533 (1962) (see discussion of these decisions in Capobianco v. Gordon, 19 Md. App. 662, 313 A.2d 517 (1974)), which indicates [sic] a broader discretion exists in the case of equity judgments, are no longer applicable." (Emphasis added.)

The purpose of this Court in adopting Rule 625 in 1956, effective January 1, 1957, was to make the practice relative to enrolled judgments and decrees identical in law and equity. Substantial differences had existed. This Court has not held since that date that an exception to the rule exists in an equity case not heard on its merits, although it is true

that there is dicta in some cases allowing such an interpretation.

We could take a great deal of time and fill up a number of pages in the Maryland Reports in analyzing and explaining the various cases that have dealt with the matter, in tracing the development of the rule, and in demonstrating that the cases cited by Beltway, relied upon by the Court of Special Appeals for its decision, are not authority for a holding here in favor of Beltway. We fear, however, that to follow such a course might well contribute to further misunderstanding and divert the minds of readers from the central message we wish to leave. That message is that law and equity stand on the same footing under Rule 625 a and there is no exception to that rule for cases not heard upon their merits. Fraud, mistake, or irregularity must be seasonably shown before a judgment may be set aside.

Notwithstanding our pronouncements upon the subject, it is obvious that Beltway misunderstands the terms "fraud, mistake or irregularity" as used in Rule 625 a. On the subject of fraud, quoting from *Tasea Investment Corp. v. Dale*, 222 Md. 474, 478, n. 1, 160 A. 2d 920 (1960), we said in *Cohen v. Investors Funding Corp.*, 267 Md. 537, 298 A. 2d 154 (1973):

> "[F]raud . . . is an act of deliberate deception designed to secure something by taking unfair advantage of someone [. It] includes deceit, though the latter may not reach the gravity of fraud." *Id.* at 540.

*Cf. Schwartz v. Merchants Mort. Co.*, 272 Md. 305, 322 A. 2d 544 (1974), and *Fisher, Admrx. v. Demarr*, 226 Md. 509, 518, 174 A. 2d 345 (1961), in which fraud as a ground for maintaining a suit in equity to set aside an enrolled jugement or decree is discussed. We do not appear to have defined the term "mistake" as used in Rule 625, although in some cases we seem to have equated that term with "irregularity." We have said that the term "mistake" as used in this rule is not applicable to an enrolled decree in a mechanics' lien foreclosure case making reference to the

wrong lot, *Brunecz v. DiLeo,* 263 Md. 481, 483, 283 A. 2d 606 (1971); to the mistaken belief of out-of-state counsel that the Maryland procedure relative to attachment was similar to that in his state, which belief brought about a judgment by default, *Penn Central Co. v. Buffalo Spring,* 260 Md. 576, 581, 273 A. 2d 97 (1971); to the negligence or mistake of the agents and counsel of a complaining party, *Wooddy v. Wooddy,* 256 Md. 440, 453, 261 A. 2d 486 (1970); to failure to attach a ledger card to an affidavit with a motion for summary judgment or the failure of counsel to file an appropriate pleading prior to the expiration of the time specified by rule, *Household Fin. Corp. v. Taylor,* 254 Md. 349, 356, 254 A. 2d 687 (1969); to a finding that a judgment by default was based upon vouchers, some of which were in the name of the defendant, some in the name of a corporation, and some in the name of another person, *Berwyn Fuel & Feed Co. v. Kolb,* 249 Md. 475, 478-79, 240 A. 2d 239 (1968); to a mistaken determination that summary judgment should be entered against a defendant, *Rhodes Co. v. Blue Ridge Co.,* 218 Md. 329, 331, 146 A. 2d 771 (1958); or to a failure by parties defendant to inform their attorneys of the defenses that they had, *Thomas v. Hopkins,* 209 Md. 321, 326-27, 121 A. 2d 192 (1956). The type of situation in which mistake might be applicable is demonstrated by *Miles v. Hamilton,* 269 Md. 708, 309 A. 2d 631 (1973), (no valid service of process) and *Ashe v. Spears,* 263 Md. 622, 284 A. 2d 207 (1971), *cert. denied,* 406 U. S. 958 (1972), (a contention of no valid service of process). It is further demonstrated by two cases arising before adoption of Rule 625, *Harvey v. Slacum,* 181 Md. 206, 210-11, 29 A. 2d 276 (1942), (default judgment entered where there had been no valid service of process), and *May v. Wolvington,* 69 Md. 117, 14 A. 706 (1888), (judgment by default entered for lack of a plea when appropriate pleading had in fact been filed). In the latter case the Court explained:

> "When an attorney delivers to the clerk his pleas properly entitled, with a direction in writing to file them, he can do nothing more. If by mistake or inadvertence, the clerk files them in a case to which

they are not directed, he is not by any means to lose the benefit of them. When a party has complied with all the requirements of the law, there is no rule of right reason which would punish him for the errors of a ministerial officer of the court. These defendants have done nothing to forfeit the invaluable privilege of being heard in their own defense. It is but simple justice that they should have the benefit of their pleas. They must be considered as filed in the proper case. They were, in legal effect, filed therein. The fact that the clerk placed them in the wrong bundle of papers, and made the docket entries in the wrong suit, has no more effect in defeating the rights of the defendants, than if he had mislaid them in any other way; or had lost them." *Id.* at 122.

Judge Singley discussed the matter of irregularity for the Court in *Weitz v. MacKenzie,* 273 Md. 628, 331 A. 2d 291 (1975), where he said:

"Under our cases, an irregularity which will permit a court to exercise revisory powers over an enrolled judgment has been consistently defined as the doing or not doing of that, in the conduct of a suit at law, which, conformable to the practice of the court, ought or ought not to be done, *Mutual Benefit Society of Baltimore, Inc. v. Haywood,* 257 Md. 538, 263 A. 2d 868 (1970); *Household Finance Corp. v. Taylor,* 254 Md. 349, 254 A. 2d 687 (1969); *Himes v. Day,* 254 Md. 197, 254 A. 2d 181 (1969); *Grantham v. Board of County Comm'rs for Prince George's County,* 251 Md. 28, 246 A. 2d 548 (1968); *Berwyn Fuel & Feed Co. v. Kolb,* 249 Md. 475, 240 A. 2d 239 (1968). As a consequence, irregularity, in the contemplation of the Rule, usually means irregularity of process or procedure, *Shaw v. Adams,* 263 Md. 294, 283 A. 2d 390 (1971); *Penn Central Co. v. Buffalo Spring & Equip. Co.,* 260 Md. 576, 273 A. 2d 97 (1971); *Mutual Benefit Society of Baltimore, Inc. v. Haywood, supra,* and not an

error, which in legal parlance, generally connotes a departure from truth or accuracy of which a defendant had notice and could have challenged, *Berwyn Fuel & Feed Co. v. Kolb, supra,* 249 Md. at 478-79. *See also Abell v. Simon,* 49 Md. 318, 322-24 (1878)." *Id.* at 631.

That which occurred here does not fit within "fraud, mistake, or irregularity" as heretofore defined by this Court. Accordingly, there being no exception for equity cases not heard upon their merits, Beltway must fail in its attempt to set aside the ratification of the sale. There is yet another reason, however, why it should fail and that is that in moving to set aside a judgment on the ground of fraud, mistake, or irregularity a party must show by satisfactory proof that he is acting in good faith, with ordinary diligence, and that he has a meritorious defense or cause of action, as the case may be. *Cohen, supra,* 267 Md. 537, 541; *Berwyn Fuel & Feed Co., supra,* 249 Md. 475, 478; *Murray v. Fishman Constr. Co.,* 241 Md. 538, 548, 217 A. 2d 357 (1966); and *Tasea Investment Corp., supra,* 222 Md. 474, 479. In this case the chancellor observed, "The extraordinarily long time that passed from the date of sale until Beltway raised its complaint precludes a finding of diligence and may even bring the issue of good faith into question." We agree that Beltway did not show the diligence required by our cases.

> *Judgment reversed and case remanded to the Court of Special Appeals for passage of an order affirming the order of the Circuit Court for Prince George's County; appellee to pay the costs.*