497 A.2d 826

**Isidore Gordon PREISSMAN**

v.

**MAYOR AND CITY COUNCIL OF BALTIMORE.**

**No. 29, Sept. Term, 1985.**

Court of Special Appeals of Maryland.

Oct. 3, 1985.

Isidore Gordon Preissman, Baltimore, pro se.

Harry L. Chase and Sandra R. Gutman, Asst. City Sols. (Benjamin L. Brown, City Sol. on brief), Baltimore, for appellee.

Argued before ALPERT and ROBERT M. BELL, JJ., and JAMES S. GETTY, Associate Judge of the Court of Special Appeals (retired), Specially Assigned.

ALPERT, Judge.

Ostensibly, this appeal is about the non-payment of real property taxes (by the appellant-property owner, Isidore Gordon Preissman) and the collection of those taxes (by the appellee, Mayor and City Council of Baltimore). But that's not the whole story. There is a bizarre twist to this case. Because the City eventually realized that it had indeed collected the delinquent taxes, it wanted to return to appellant certain properties that it had sold and bought at tax sale. Appellant thus far has declined appellee's noble gesture. He simply doesn't want the properties back.

In furtherance of his non-acceptance, the appellant-property owner is questioning the propriety of an order dated September 19, 1984, from the Circuit Court for Baltimore City, reinstating his title to two properties known as 929 and 1012 North Stricker Street. The properties were sold at a tax sale held on May 28, 1980, because of delinquent taxes and other liens totalling $2,193.72. No attempt was made to redeem these properties; hence, on July 25, 1983,

the City obtained a decree vesting title in it and foreclosing all rights of redemption in the subject properties as well as in a number of other tax sale parcels. Prior to the signing of this decree, however, the City had filed a different suit against appellant in the then Superior Court of Baltimore City, obtained a judgment on December 21, 1981, and attached a bank account held by appellant. As a result of said attachment, the delinquent taxes on the North Stricker Street properties were paid in full as of September 15, 1982. Hence, the City was paid all monies owed it and appellant remained the property owner of record.

The monetary judgment in favor of the City was appealed to this court and affirmed. A petition for certiorari was filed with the Court of Appeals and, while this petition was pending, the City "inadvertently" filed a Bill of Complaint to Foreclose Rights of Redemption as to the two properties at issue herein. A decree granting that relief was issued on July 25, 1983, a few weeks before the August 9, 1983, denial of the cert petition by the Court of Appeals. Evidently, two different divisions of the City government handle this type of case, namely the Law Department ("Tax Sales") and "Collections." When "Tax Sales" filed the complaint to finalize the foreclosure proceeding, it was totally unaware that "Collections" had satisfied the judgment *vis-a-vis* the bank account attachment.

Once the City realized that it had both collected the past-due taxes *and* foreclosed upon the property, on November 23, 1983, it filed a motion to set aside the decree vesting title to the property in the City. A hearing was held before Master in Chancery Tockman on April 30, 1984. In her "Report and Recommendation," Master Tockman found:

> The Master concludes that the election of remedies doctrine as applied to the sales by the *Surratts*[1] holding results in a bar to further court proceedings once a final

---

1. *Surratts Assoc. v. Prince George's County,* 286 Md. 555, 408 A.2d 1323 (1979).

judgment is obtained in either of the alternate suits permitted by a county or Baltimore City. Depending on the factual context 'election of remedies' may refer to different legal doctrines, including contract theory, estoppel and res judicata. Dobbs, *Remedies* § 1.5 (1973).

*If this Court had known on July 25, 1983 that the City's tax claim had already resulted in a final judgment and collection, the Decree would not have been granted; nor would the Court knowingly pass a Decree regarding property that had been redeemed.* In both situations jurisdiction over the property would be lacking and in both situations a Decree, if granted, should be vacated upon application of either party. In the contract setting election of remedies may be a defense subject to waiver, but in tax sales the *Surratts* holding makes clear that a *final judgment* bars another suit; this holding is an expression of res judicata that is jurisdictional in nature and cannot be waived.

Title to the properties should be reinstated to Isidore G. Preissman. However, reinstatement should not be retroactive to July 25, 1983 or to September 15, 1982 (the date the prior judgment was satisfied). Mr. Preissman should not be penalized for relying on the July 25, 1983 Decree that de-vested him of title. Once the prospective reinstatement of title occurs, however, he will have all the rights and obligations of ownership, including maintenance of the properties.

A subsequent clarification was filed by Master Tockman on July 13, 1984, stating appellant was not liable for taxes and code violations from July 25, 1983 until the Order was stricken. Appellant filed Exceptions to the Master's Report and a hearing was held before the Baltimore City Circuit Court. The trial judge affirmed the Master's Recommendation and further ordered that appellant be relieved of any liability to pay taxes from July 25, 1983 through September 19, 1984. On September 20, 1984, an amended decree was filed by the Circuit Court deleting the properties at issue from the decree foreclosing rights of redemption in the case

*sub judice.* It is from this decree that appellant appeals, arguing essentially that:

1. the trial judge erred in setting aside the decree fore-closing upon the two properties, and

2. the trial judge erred in ruling that the City was barred from foreclosing upon the subject property because it had elected its remedy when it collected the back taxes through the attachment process.

### 1.

Maryland Rule 2–535(b) (formerly 625) provides that "[o]n motion of any party filed at any time, the court may exercise revisory power and control over the judgment in case of fraud, mistake or irregularity." Appellee alleges that at the time it filed its Bill of Complaint to foreclose upon the property, it had no knowledge that the taxes owed had been collected through the attachment process *and* that said case was then proceeding within the appellate process. (Appellee is quick to point out that appellant was fully aware of the mix-up, yet never came forward.) Appellee thus contends that the filing of the complaint was a "mistake" and that said "mistake was jurisdictional in nature for the Circuit Court would not have considered granting the Decree had it known that jurisdiction still lay with the Court of Appeals."

This case is unusual because of the posture of the parties. The appellant-property owner had paid his back taxes, but never objected to the City's further attempt to take final title to the property. Clearly, if appellant had objected to the duplicitous activities on the part of the City, his objection would have been upheld. Appellant, however, does not want the properties back, apparently because of various housing violations. Hence, the issue is whether the circuit court may set aside the enrolled decree upon motion of the City: in other words, whether the factual scenario herein comes within the ambit of a rule 2–535(b) "mistake."

The meaning of "mistake" was discussed by this court in *Bernstein v. Kapneck,* 46 Md.App. 231, 417 A.2d 456 (1980), *aff'd,* 290 Md. 452, 430 A.2d 602 (1981). Factually, that case involved an auto tort with personal injuries, settled by the parties. It was later learned that one of the plaintiffs received a brain injury, a fact not known at the time of settlement. Plaintiffs then filed a motion to set aside premised upon their mistake as to the extent of injuries. The motion was denied and the court noted that "the mistake must necessarily be confined to those instances where there is a jurisdictional mistake involved." 46 Md. App. at 239, 417 A.2d 456. The court cited *Hughes v. Beltway Homes, Inc.,* 276 Md. 382, 387, 347 A.2d 837 (1975)[2] for a catalogue of cases in which a "mistake" has been found.

The type of situation in which mistake might be applicable is demonstrated by *Miles v. Hamilton,* 269 Md. 708, 309 A.2d 631 (1973), (no valid service of process) and *Ashe v. Spears,* 263 Md. 622, 284 A.2d 207 (1971), *cert. denied,* 406 U.S. 958 [92 S.Ct. 2061, 32 L.Ed.2d 344] (1972), (a contention of no valid service of process). It is further demonstrated by two cases arising before adoption of Rule 625, *Harvey v. Slacum,* 181 Md. 206, 210–11, 29 A.2d 276 (1942), (default judgment entered where there had been no valid service of process), and *May v. Wolvington,* 69 Md. 117, 14 A. 706 (1888), (judgment by default entered for lack of a plea when appropriate pleading had in fact been filed).

*See also Hamilos v. Hamilos,* 52 Md.App. 488, 497, 450 A.2d 1316 (1982), *aff'd,* 297 Md. 99, 465 A.2d 445 (1983) ("The word 'mistake' as employed in Md. Rule 625a does not mean a unilateral error of judgment on the part of one of the parties").

---

**2.** The primary issue in *Hughes* was whether Rule 625a applied to equity cases, in that case the ratification of a tax sale.

The Court of Appeals held that 625a applies equally to law and equity, and that "[f]raud, mistake or irregularity must be seasonably shown before a judgment may be set aside." 276 Md. at 386, 347 A.2d 837.

In sum, those Maryland cases in which "mistake" has been found involve a procedural error stripping the court of *jurisdiction*. The most obvious occurs when a defendant has not been served properly and, hence, the court never obtains personal jurisdiction over him. An examination of the term "jurisdiction" makes clear that the "mistake" made in the instant case was not jurisdictional in nature.

What is meant by the lack of jurisdiction in its fundamental sense such as to make an otherwise valid decree void is often misunderstood. As Judge Horney noted for this Court in *Moore v. McAllister*, 216 Md. 497, 507, 141 A.2d 176 (1958):

'Juridically, jurisdiction refers to two quite distinct concepts: (i) the *power* of a court to render a valid decree, and (ii) the *propriety* of granting the relief sought. 1 *Pomeroy, Equity Jurisprudence* (5th ed. 1941), Secs. 129–31).' (emphasis in original).

It is only when the court lacks the power to render a decree, for example because the parties are not before the court, as being improperly served with process, or because the court is without authority to pass upon the subject matter involved in the dispute, that its decree is void. *Moore v. McAllister, supra; Fooks' Executors v. Ghingher, supra* [172 Md. 612, 620–21, 192 A. 582, *cert. denied*, 302 U.S. 726, 58 S.Ct. 47, 82 L.Ed. 561 (1937)]. On the other hand, the question of whether it was appropriate to grant the relief merges into the final decree and cannot thereafter be successfully assailed for that reason once enrolled. *Steinpreis v. Leet*, 240 Md. 212, 213 A.2d 555 (1965).

*First Federated Commodity Trust v. Commissioner of Securities*, 272 Md. 329, 334, 322 A.2d 539 (1974). The Circuit Court does have the *power* to render a decree in the tax sale case. The glitch herein relates to the fact that the *reason* for the tax sale (*i.e.*, the back taxes) had been vitiated prior to the filing of the Bill of Complaint. More-

over, the tax collection case was still pending in an appellate stance at the time the complaint was filed. There is no question that once the appellant failed to pay the taxes owed on the subject properties, the City had the right to collect the delinquent taxes either through a tax sale of the property (Art. 81, § 70 *et seq.*), or through a suit in assumpsit (Art. 81, § 206). The Court of Appeals held that either method is proper in *Surratts Associates v. Prince George's County,* 286 Md. 555, 408 A.2d 1323 (1979). "[W]e hold that it was the clear intention of the General Assembly to provide taxing authorities, and their collection agents, *alternative methods* of proceeding against real property taxpayers." 286 Md. at 566, 408 A.2d 1323 (emphasis added). In the case *sub judice,* the City failed to choose one alternative, but instead utilized each method and reached two successful conclusions. Clearly, the Legislature did not provide two alternatives to provide a "windfall" to the local government, *i.e.,* it was not intended that the municipality receive the back taxes *and* the property.

An examination of Art. 81 § 97 *et seq.* ("Foreclosure of Rights of Redemption by Equity Suits") provides support for this theory. Md.Code Ann. Art. 81 § 100 (1980 Repl. Vol.Cum.Supp.1984) provides, in pertinent part:

(a) A holder of any certificate of sale, his heirs or assigns, may at any time after the expiration of one year and a day from the date of sale in any of the counties, or after six months from the date of sale in Baltimore City, *file a bill in equity to foreclose all rights of redemption of the property to which such certificate relates,* as hereinafter provided. The right to redeem shall, nevertheless, exist and continue until finally barred by decree of the court of equity in which the foreclosure proceeding is filed.

Pursuant to Art. 81 § 92 (1980 Repl.Vol.), the owner of property sold by the collector "may redeem the said property at any time until the right of redemption has been finally

foreclosed under the provisions of this subtitle,[3] by paying to the collector the amount required for redemption as hereinafter set forth." Essentially, to redeem the property, the owner must pay all back taxes and associated costs to avoid the final link in the chain—an equitable suit to foreclose all rights of redemption. In the instant case, this payment[4] was made by appellant when the City attached a bank account and collected monies owed. In a sense, the attachment was the functional equivalent of a redemption.[5] The "involuntary" nature of the payment should not alter the outcome. Therefore, at the time the City filed its Bill of Complaint, the debt had been satisfied, and, accordingly, the complaint should not have been filed or heard. Unfortunately, under the rationale of *First Federated,* the inappropriateness of this action has "merge[d] into the final decree." 272 Md. at 334, 322 A.2d 539.

### 2.

Appellee contends that the lower court was correct in setting aside the decree because it, the City, was free to utilize "alternative methods of proceeding against defaulting property owners," *Surratts Associates v. Prince George's County,* 286 Md. 555, 566, 408 A.2d 1323 (1979), and, therefore, "the election of remedies doctrine as applied to the sales by the *Surratts* holding results in a bar to further court proceedings once a final judgment is obtained in either of the alternate suits permitted by a county or

---

3. See generally Md.Code Ann. Art. 81 § 102 (1980 Repl.Vol.) ("Form of Bill of Complaint").

4. The payment may differ somewhat from that prescribed by Md.Code Ann. Art. 81 § 93.

5. *See generally Surratts,* 286 Md. at 567, 408 A.2d 1323 ("Of course had there been a private purchaser at the tax sale with the tax collector receiving payment in accord with section 81, or if payment by the way of: sale of the certificate of purchase (§ 89), redemption by the owner (§§ 92–94), or through the foreclosure of the right of redemption decreeing title to the real property to be in the county (§ 112), the tax indebtedness would become satisfied and no other suit could be maintained.")

Baltimore City." *Surratts* did not arise in the same procedural posture as the case at bar. The issue in *Surratts* was whether a certain statute (passed to repeal inconsistent acts) repealed Article 81 § 206—permitting a suit in assumpsit to collect back taxes. The Court of Appeals held that Section 206 was not repealed and that the statute at issue merely rescinded all variations in procedures then existing for conducting a tax sale. 286 Md. at 565, 408 A.2d 1323.

In *Surratts* appellant also contended that the County had elected its remedy by offering the property at a tax sale and, therefore, could not maintain the assumpsit suit. The court disagreed essentially because the back taxes had never been collected. *Surratts* differs from the instant proceeding in two important respects. Although the property was offered at a tax sale and taken by the County when no private purchaser appeared, the County never finalized the sale by filing a Bill of Complaint and negating any attempt by Surratts to redeem it. Hence, at the time Surratts challenged the assumpsit action, no payment had been received. Moreover, *Surratts* raised the doctrine of election of remedies in a *defensive posture*. The doctrine of election of remedies is intended to prevent inconsistent results. *Surratts*, 286 Md. at 568, 408 A.2d 1323. "Among its necessary elements are the following: (1) two or more coexisting remedies between which there is a right of election; (2) inconsistency as to such available remedies; and (3) the actual bringing of an action and pursuing it to a final judgment." *Id.* A plaintiff is "not at liberty 'to again vex the same defendant with another suit in a different form of action for the identical demand.'" *Shoreham Developers, Inc. v. Randolph Hills, Inc.*, 269 Md. 291, 299, 305 A.2d 465 (1973) (citation omitted). There is no doubt that the two remedies pursued *and* concluded by appellee are alternative in nature. Thus, "if one of these is pursued to judgment, the other is barred." *Id.*[6] It is normally at

---

6. At odds in *Shoreham* was restitution versus a suit for damages.

the behest of the defendant that the doctrine of election of remedies is applied. "The *purpose* of the doctrine of election of remedies *is . . . to prevent* double redress for a single wrong." *Herring v. Citizens Bank & Trust Co.*, 21 Md.App. 517, 543, 321 A.2d 182 (1974) (citation omitted) (emphasis added). Here, there is really nothing to "prevent" because the remedies, which are definitely inconsistent, have been concluded. Can the inconsistent judgment be *excised* after it has been enrolled? Again, we say "no" because under the rationale of *First Federated,* the inappropriate nature of this action has "merge[d] into the final decree." *First Federated,* 272 Md. at 334, 322 A.2d 539.

JUDGMENT REVERSED; COSTS TO BE PAID BY APPELLEE.